```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
ROMAIN R. BRANCH,

                        Plaintiff,

        -against-

STATE UNIVERSITY OF NEW YORK
and AYMAN FANOUS, Individually and
as Chair of the Department of Psychiatry,
STATE UNIVERSITY OF NEW YORK
DOWNSTATE MEDICAL CENTER,

                        Defendants.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __7/20/2020__

18 Civ. 9516 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Romain R. Branch, brings this action against Defendants, the State University of New York ("SUNY") and Ayman Fanous, M.D., individually and as Chair of the Department of Psychiatry at SUNY Downstate Medical Center, alleging employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, 42 U.S.C. § 1981, 42 U.S.C. § 1983, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290, *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C Admin. Code §§ 8-101, *et seq.* *See* Compl. ¶¶ 1, 116–140, ECF No. 41. Plaintiff, an "African-American of Caribbean national origin,"[1] alleges discrimination, retaliation, and hostile work environment, on the basis of his race and national origin. *Id.* ¶¶ 1, 5, 116–140. Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 75. For the reasons stated below, the motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are taken from the complaint and "are presumed to be true for purposes of considering a motion to dismiss for failure to state a claim." *Fin. Guar. Ins. Co. v.*

---

[1] Plaintiff does not indicate from which of the more than a dozen Caribbean "nations" he originates.

*Putnam Advisory Co., LLC*, 783 F.3d 395, 398 (2d Cir. 2015).  In December of 2015, Plaintiff was hired as a Clinical Assistant Professor of Psychiatry and the Director of the Adult Psychiatry Residency Training Program ("Program Director") at the SUNY Downstate Medical Center.  *See* Compl. ¶¶ 7, 21.  During his tenure, Plaintiff was the only African American of Caribbean descent employed in the Psychiatry Department and perhaps the only one to have held the position of Program Director.  *Id.* ¶¶ 25–26.  When Plaintiff began his employment, he reported to Stephen Goldfinger, M.D., who is white and the Chair of the Psychiatry Department.  *See id.* ¶¶ 23, 27.  In August of 2016, Ayman Fanous, M.D., replaced Dr. Goldfinger as Chair.  *Id.* ¶ 31.

The Program Director oversees the psychiatry residency program in conjunction with the Chair.  *Id.* ¶¶ 22–23.  Plaintiff met weekly with the Chair to discuss Plaintiff's work, address issues and concerns, and obtain the Chair's approval for projects and activities.  *Id.* ¶¶ 23, 45, 48, 50.  Beginning in September 2017, Dr. Fanous refused to attend these weekly meetings, refused to reschedule cancelled meetings, failed to respond to Plaintiff's follow-up emails, and excluded him from meetings with other faculty members that Plaintiff had previously been invited to.  *Id.* ¶¶ 45–48, 51–52, 105–110.  Plaintiff, therefore, was unable to obtain Dr. Fanous' approval for various projects, because of his cancelling and refusing to attend meetings.  *Id.* ¶¶ 48, 59–62.

Plaintiff alleges that he was required to perform additional work that his predecessors were not required to perform.  These include clinical duties at Kings County Hospital, *id.* at ¶¶ 76–77, and administrative and ministerial duties that would typically be performed by an Assistant Program Director.  *Id.* ¶ 67.  Unlike his predecessors and successors, all of whom were white except one, Plaintiff was denied an Assistant Program Director.  *Id.* ¶¶ 67, 69–71.

Plaintiff voiced concerns about his additional responsibilities and Dr. Fanous' conduct towards him, including in two internal written complaints dated December 6, 2017 and March

2

23, 2018 (the "Written Complaints"). *Id.* ¶¶ 81, 84–85, 87–88; *see also* ECF No. 76-1. In February 2018, Dr. Fanous recommended firing Plaintiff upon the expiration of his contract. *Id.* ¶¶ 41–42, 86. Plaintiff continued as Program Director until March 15, 2018, when Dr. Fanous removed him and demoted Plaintiff to the position of Attending Psychiatrist. *Id.* ¶ 37. Plaintiff maintained his title of Clinical Assistant Professor of Psychiatry. *Id.* ¶ 39. Ramasway Viswanathan, M.D., who is of Indian descent, was then appointed as Acting Director, *id.* ¶ 53, and Scott McAfee, M.D., who is white, was later appointed on a permanent basis, *id.* ¶ 54. On March 15, 2018, SUNY notified Plaintiff that it had adopted Dr. Fanous' nonrenewal recommendation and terminated Plaintiff's employment upon the contract's expiration. *Id.* ¶¶ 41–42, 89.

Plaintiff alleges that Defendants' decision to demote him, not renew his contract, deny him an Assistant Program Director, and exclude him from meetings was (1) motivated by Plaintiff's race and national origin and (2) constituted retaliation against him for making complaints against Dr. Fanous and the Department of Psychiatry. *Id.* ¶¶ 38, 42, 81, 87, 90–96.

## DISCUSSION

I. <u>Standard of Review</u>

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A plaintiff is not required to provide "detailed factual allegations" in the complaint, but

3

must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." *Id*.  A court must "accept[] the factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

In evaluating a motion to dismiss, "the Court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken." *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 570 (S.D.N.Y. 2013) (citing *Chambers*, 282 F.3d at 153).  Accordingly, because Plaintiff specifically references the Written Complaints, Compl. ¶¶ 21–24, 38, 81, 87, those documents are incorporated by reference and the Court will consider them, *see* ECF No. 76-1, in evaluating Defendants' motion to dismiss.  *See, e.g.*, *Menaker v. Hofstra Univ.*, 935 F. 3d 20, 27 n.7 (2d Cir. 2019) (determining, in a motion to dismiss a Title VII action, that non-party's written complaint addressed to defendant university's president was incorporated by reference because plaintiff's amended complaint relied on non-party's complaint); *Blue Tree Hotels Inv. (Canada), Ltd.*, 369 F.3d 212, 217 (2d Cir. 2004) ("Our review is generally limited to the facts and allegations that are contained in the complaint and in any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits.").

II.   Analysis

A. Title VII, § 1981, § 1983, and NYSHRL Disparate Treatment Claims

Claims of disparate treatment under Title VII, § 1981, § 1983, and NYSHRL are

analyzed using the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010); *Ferrante v. American Lung Ass'n*, 90 N.Y.2d 623, 629 (1997). To establish a prima facie case of discrimination under *McDonnell Douglas*, "a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Ruiz*, 609 F.3d at 491–92. "The burden of establishing a prima facie case is not a heavy one." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000).

In order to satisfy their burden at the pleadings stage, plaintiffs must plausibly allege "facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). Although a plaintiff may raise an inference of discrimination based on his race by alleging that he was treated less favorably than a similarly situated employee, such allegations must demonstrate that the other employee's situation was "sufficiently similar to [P]laintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001).

Defendants do not dispute that Plaintiff has adequately pleaded the first two elements of a prima facie case. *See generally* Def. Mem., ECF No. 77. Defendants argue, however, that Plaintiff has failed to plausibly allege an adverse employment action or an inference of discrimination. *Id.* at 7–13.

### 1. Adverse Employment Action

An adverse employment action is "a materially adverse change in the terms and conditions of employment. To be materially adverse, a change in working conditions must be

more disruptive than a mere inconvenience or an alteration of job responsibilities." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (internal quotation marks and citations omitted). Examples include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotation marks, citation, and alterations omitted). Plaintiff plausibly alleges at least two adverse employment actions.

First, Plaintiff alleges that Dr. Fanous recommended that SUNY not renew Plaintiff's contract when it expired, a recommendation that SUNY adopted, and which resulted in Plaintiff losing his job. Compl. ¶¶ 41–42. "It is well-settled in the Second Circuit that termination of employment constitutes an adverse employment action." *Kamrowski v. Morrison Mgmt. Specialist*, No. 05 Civ. 9234, 2010 WL 3932354, at *13 (S.D.N.Y. Sept. 29, 2010).

Second, Plaintiff alleges that prior to SUNY hiring Plaintiff as Program Director, all of his predecessors, who were white, were assigned an Assistant Program Director, to help them perform general administrative and ministerial tasks. Compl. ¶ 67. Plaintiff's successor, a white man, was also provided with an Assistant Program Director. *Id.* ¶¶ 54, 69. Plaintiff alleges that he was not assigned an Assistant Program Director, and, therefore, had additional responsibilities compared to his predecessors and successors. *See id.* ¶ 75. This "loss of support staff" constitutes a materially adverse employment action considering the "more favorable treatment towards other employees." *See MacAlister v. Millenium Hotels & Resorts*, No. 17 Civ. 6189, 2018 WL 5886440, at *4 (S.D.N.Y. Nov. 8, 2018).

Defendants do not challenge that Plaintiff's allegations concerning his termination and Defendants' failure to provide an Assistant Program Director constitute adverse employment

actions.  *See generally* Def. Mem. at 7–9 (failing to address whether Plaintiff's termination and refusal to provide support staff constitute adverse employment action); Def. Reply, ECF No. 93 (same).  Instead, Defendants argue that Plaintiff's allegations that he (1) had to perform additional clinical duties, (2) was demoted from Program Director to Attending Psychiatrist, and (3) had multiple meetings with Dr. Fanous cancelled, do not constitute adverse employment actions.  *See* Def. Mem. at 7–9.  With respect to the demotion in particular, Defendants argue that Plaintiff was not demoted but rather, that he declined to remain in his position because he disagreed with the programmatic changes that were being made to SUNY's residency program. *Id.* at 8.  Plaintiff disputes this, however, and contends that he never relinquished his position. *See* Pl. Opp. at 6–7, ECF No. 87.  The parties, therefore, put forth conflicting accounts as to the reason for Plaintiff's demotion, and whether he was demoted in the first place.  On this motion, however, "the Court must accept as true the allegation" that Defendants demoted Plaintiff from his position.  *Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460, 470 (S.D.N.Y. 2013); *see* Compl. ¶¶ 37–40.  Defendants will "have an opportunity to test [their] factual claims in discovery and to renew those argument at summary judgment, or at trial." *Trachtenberg*, 937 F. Supp. 2d at 470.

Moreover, having already found that Plaintiff has adequately alleged at least two adverse employment actions, and keeping in mind that "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits," the Court need not address at this stage whether these other allegations also constitute adverse employment actions. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citation omitted).

2. Inference of Discrimination

The Court now turns to whether the alleged adverse actions took place under circumstances giving rise to an inference of discrimination. *Ruiz*, 609 F.3d at 491–92. "It is well-settled that an inference of discriminatory intent may be derived from a variety of circumstances, including . . . the more favorable treatment of employees not in the protected group." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009), *superseded by statute on other grounds*. "[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). "In other words, the comparator must be similarly situated to the plaintiff in all material respects." *Ruiz*, 609 F.3d at 494 (internal quotation marks and citation omitted).

The Court finds that Plaintiff has plausibly alleged "facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87. Plaintiff alleges that he is an African-American man of Caribbean national origin, performed his duties in an "exemplary manner," including receiving a Distinguished Faculty Award for 2016-2017, and that he suffered multiple adverse employment actions that were motivated by race. *See* Compl. ¶¶ 7, 34, 35, 37, 41–43, 67–69. Specifically, he claims that Defendants removed him from the position of Program Director, effectively demoting him and replacing him with Viswanathan, and later McAfee, both of whom are not African-American. *Id.* ¶¶ 40, 53, 54. He also alleges that Defendants denied numerous requests for an Assistant Program Director, which caused Plaintiff to have a heavier workload than his white predecessors and successors, all of whom were provided support staff. *Id.* ¶¶ 67–72.

Courts in this district have found similar allegations sufficient to survive a motion to

8

dismiss. *See, e.g.*, *Hagan v. City of New York*, 39 F. Supp. 3d 481, 496 (S.D.N.Y. 2014) (finding that allegations by African American former Equal Employment Officer for city stated a claim for disparate treatment based on race where plaintiff alleged that she was subjected to inferior terms and conditions of employment compared to similarly situated white employees, including loss of substantial job responsibilities, an involuntary transfer that amounted to a demotion, and termination); *Gachette v. Metro North High Bridge*, 12 Civ. 3838, 2013 WL 144947, *5 (S.D.N.Y. Jan. 14, 2013) ("By alleging that Metro North was his employer, that he is black, that black electricians were paid less than white ones and that he was denied overtime opportunities that were instead given to white electricians, [p]laintiff has sufficiently alleged . . . disparate treatment claims."); *Morales v. Long Island Rail Rd. Co.*, No. 09 Civ. 8714, 2010 WL 1948606, at *3 (S.D.N.Y. May 14, 2010) ("A complaint that contains specific factual allegations as to events leading up to an adverse action, accompanied by conclusory allegations of discriminatory intent, suffices to state a discrimination claim."); *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008) (plaintiff adequately pleaded discrimination where she "identified the particular events giving rise to her claim and alleged that she was treated less favorably than other loan applicants because of her race").

Defendants contend that Plaintiff's allegations of discriminatory intent are contradicted by the Written Complaints. Def. Mem. at 9–10. Specifically, they argue that the Written Complaints attribute the alleged discriminatory actions to "his refusal to 'consent to' changes that were being made to the [p]sychiatry [r]esidency [t]raining [p]rogram." *Id.* They also contend that the Written Complaints did not "claim that these decisions were motivated by discriminatory animus." *Id.* at 10. Where documents incorporated by reference provide a more plausible explanation for a defendant's actions, such an explanation may defeat the inference that

9

those actions were motivated by discriminatory animus. *See Kajoshaj v. New York City Dept. of Educ.*, 543 F. App'x. 11, 14–15 (2d Cir. 2013). Here, the Written Complaints do not defeat an inference of discrimination because although they provide possible explanations for the allegedly discriminatory events and decisions Plaintiff complains about, they do not eliminate the possibility that some of those events or decisions may have been racially motivated. *See Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) ("[P]laintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." (internal quotation marks and citation omitted)).

Following the replacement of Dr. Goldfinger, Plaintiff continued as Program Director and began reporting to Dr. Fanous. Compl. ¶ 33. Defendants contend that inferring discrimination is "'less permissible when a new supervisor is appointed,'" because Dr. Fanous was "'entitled to set his own standards and agenda . . . even if those expectations are contrary to a prior manager's expectations.'" Def. Mem. at 11 (quoting *Johnson v. New York City Dept. of Educ.*, 39 F. Supp. 3d 314, 324 (E.D.N.Y. Aug. 19, 2014)). This argument is unavailing. As a new supervisor, Dr. Fanous may have been entitled to chart a new course. This might explain why individuals who were supervised by Dr. Goldfinger were treated differently from those supervised by Dr. Fanous. Here, however, it is clear that Dr. Fanous—at least with respect to assigning support staff—gave Viswanathan and McAfee Assistant Program Directors, but did not do the same for Plaintiff. Thus, the change in supervisors, does not account for why Plaintiff was treated differently.

The Court, therefore, finds that Plaintiff has plausibly alleged a disparate treatment claim under Title VII. Defendants move to dismiss Plaintiff's § 1981, § 1983, and NYSHRL claims on

the ground that those claims are analyzed under the same standards as Title VII cases and fail for the same reasons that Plaintiff's Title VII claims fail. Def. Mem. at 21–22. Because Plaintiff has adequately pleaded a prima facie case of discrimination under Title VII, however, Defendants' motion to dismiss Plaintiff's Title VII, § 1981, § 1983, and NYSHRL disparate treatment claims is DENIED.

### B. Retaliation

Plaintiff claims that Defendants retaliated against him for opposing, in the Written Complaints, Dr. Fanous' changes to the residency training program and Plaintiff's job description, and complaining about the wife of Dr. Fanous' supervisor. Compl. ¶¶ 81, 87, 115; *see also* ECF No. 76-1. Plaintiff's retaliation claim fails, however, because he does not allege that he engaged in protected activity.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). A complaint made by an employee may qualify as protected activity if the employee has a good faith, reasonable belief that he is opposing an employment practice made unlawful by Title VII. *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001).

The Written Complaints contain a litany of grievances, including that (1) Plaintiff was ignored by Dr. Fanous, *see generally* ECF No. 76-1, (2) the residency training program was in violation of "national (ACGME) standards and (ACGME) core requirements," *id.* at 3, (3) Dr. Fanous' changes to the program "are being/have been made without consultation/collaboration

11

with [Plaintiff], the appointed Program Director," *id.* at 4, (4) Plaintiff "noticed/perceived a threat to [his] current assignment . . . due to [Plaintiff's] unwillingness to consent to these changes which [Plaintiff] perceive[d] as detrimental," *id.*, (5) Plaintiff was "not afforded due process in [his] interactions with multiple administrative employees," *id.* at 9, and (6) Plaintiff suffered "retaliatory" treatment for his "non-acceptance (not consenting) of proposed changes to [his] job contract/description" and for filing a complaint in 2017 about the wife of Dr. Fanous' supervisor, *id.* at 9.

What the Written Complaints do not contain, however, is a claim that Plaintiff was opposing a practice made unlawful under Title VII, a fatal omission.  This is true even though the March 2018 complaint characterizes Defendants' treatment of Plaintiff as "discriminatory." *Id.* at 9.  "Although particular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint, neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory." *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013); *see also Foster v. Humane Society of Rochester & Monroe Cnty., Inc.*, 724 F. Supp. 2d 382, 395 (W.D.N.Y. 2010) (concluding that plaintiff did not engage in protected activity where complaints in email to supervisor did not concern unlawful discrimination).

The Written Complaints do not constitute protected activity.  Accordingly, Defendants' motion to dismiss Plaintiff's retaliation claim is GRANTED.

### C.  Hostile Work Environment

Plaintiff's hostile work environment claim also fails.  To establish a hostile work environment claim under federal and New York state law, a plaintiff must show that his workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [was]

12

sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted); *Patterson v. County of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011). A plaintiff must also plead facts that tend to show that the complained of conduct: "(1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [race or national origin]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks and citation omitted).

Whether an environment is hostile or abusive is determined by examining all of the circumstances. *Harris*, 510 U.S. at 23. Factors to be considered include (1) the frequency and severity of the alleged discriminatory conduct, (2) whether the alleged conduct is physically threatening or humiliating or is merely an offensive utterance; and (3) whether it unreasonably interferes with an employee's work performance. *Id.* "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Id.* at 21.

The conduct Plaintiff alleges—his exclusion from meetings, Dr. Fanous' refusal to answer work-related questions or attend meetings, and Plaintiff's obligation to perform duties not imposed on his predecessors or successors—do not support a finding of a hostile work environment that is pervasive or severe. *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (holding that plaintiff's alleged exclusion from meetings, defendants' refusal to answer work-related questions, and the arbitrary imposition of duties on Plaintiff that were outside of her responsibilities were "generally quite minor . . . [and] do not support a finding of a

13

hostile work environment that is severe and pervasive").

Accordingly, Defendants' motion to dismiss Plaintiff's hostile work environment claim is GRANTED.

### D. NYCHRL Claim

#### 1. Claims against Dr. Fanous in his Official Capacity[2]

As an initial matter, Plaintiff's NYCHRL claims against Dr. Fanous in his official capacity are barred by sovereign immunity. "[T]he City of New York does not have the power to waive the State's sovereign immunity." *Jattan v. Queens Coll. of City Univ. of New York*, 883 N.Y.S.2d 110, 112 (2009); *see id.* ("As an instrumentality of the State, Queens College is not subject to the provisions of the [NYCHRL]."); *see also Humphries v. City Univ. of New York*, No. 13 Civ. 2641, 2013 WL 6196561, at *11 (S.D.N.Y. Nov. 26, 2013).

Dr. Fanous' actions in his official capacity are in essence those of the State. *See Morell v. Balasubramanian*, 70 N.Y.2d 297, 301 (1987) ("A suit against a State officer will be held to be one which is really asserted against the [s]tate when it arises from actions or determinations of the officer made in his or her official role and involves rights asserted, not against the officer individually, but solely against the State.").

Accordingly, Defendants' motion to dismiss Plaintiff's NYCHRL claim against Dr. Fanous in his official capacity is GRANTED.

---

[2] "Whether a state's sovereign immunity under the Eleventh Amendment presents a question of subject matter jurisdiction is an open question in the Supreme Court and the Second Circuit." *Greenberg v. State Univ. Hosp.-Downstate Med. Ctr.*, No. 15 Civ. 2343, 2019 WL 4752018, at *9 n.15 (E.D.N.Y. Sept. 29, 2019); *see also Carver v. Nassau Cty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013) (leaving open "whether the claim of sovereign immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense"). Defendants only expressly assert a sovereign immunity defense with respect to Plaintiff's NYCHRL claim against Dr. Fanous in his official capacity. Def. Mem. at 22–23. Given the uncertainty as to whether sovereign immunity presents a jurisdictional bar (as opposed to an affirmative defense that SUNY-Defendants must assert), the Court considers sovereign immunity as an affirmative defense raised by Defendants in connection with Plaintiff's NYCHRL claims against Dr. Fanous in his official capacity only.

### 2. Claims against Dr. Fanous in his Individual Capacity

Plaintiff's claim against Dr. Fanous, in his individual capacity, however, is not barred by sovereign immunity. *See Humphries*, 2013 WL 6196561, at *11. NYCHRL "requires an independent liberal construction analysis in all circumstances, even where [s]tate and federal civil rights laws have comparable language" in order to fulfill the statute's "uniquely broad and remedial purposes." *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 31 (2009) (internal quotation marks omitted); *see also Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 110 (2d Cir. 2013).

An employer violates the NYCHRL when he discriminates against an employee in the terms, conditions or privileges of employment because of that person's race or national origin. N.Y.C. Admin. Code § 8-107(1)(a)(3). To state a claim under the NYCHRL, Plaintiff must allege that (1) he is a member of a protected class who (2) was qualified for the position he held, and (3) experienced an adverse employment action that (4) occurred under circumstances that give rise to the inference of discrimination. *Williams v. Regus Management Group, LLC.*, 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011).

The Court has already determined that Plaintiff's Title VII disparate treatment claims are sufficient to withstand Defendants' motion to dismiss. As "federal and state civil rights laws [are] a floor below which the City's Human Rights law cannot fall," N.Y.C. Local Law No. 85 of 2005, at § 1 (Oct. 3, 2005), the Court denies Defendants' motion to dismiss Plaintiff's NYCHRL claim. *See, e.g.*, *Kellman v. Metro. Transp. Auth.*, 8 F. Supp. 3d 351, 390 n.20 (S.D.N.Y. 2014); *Clarke v. InterContinental Hotels Grp., PLC*, No. 12 Civ. 2671, 2013 WL 2358596, at *11 n.13 (S.D.N.Y. May 30, 2013) (denying motion to dismiss NYCHRL retaliation claim, "without further analysis," because court had denied defendant's motion to dismiss plaintiff's Title VII

15

and NYSHRL retaliation claims).

Accordingly, Defendants' motion to dismiss Plaintiff's NYCHRL claim against Dr. Fanous in his individual capacity is DENIED.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED with respect to Plaintiff's retaliation, hostile work environment, and NYCHRL claims against Dr. Fanous in his official capacity, and DENIED with respect to Plaintiff's disparate treatment claims under Title VII, § 1981, § 1983, and NYSHRL, and his NYCHRL claim against SUNY and Dr. Fanous in his individual capacity.

The parties are ORDERED to appear for a case management conference on **August 12, 2020**, at **11:40 a.m.**  By **August 5, 2020**, the parties shall submit their joint status report.  *See* ECF No. 21 ¶ 16.

The Clerk of Court is directed to terminate the motion at ECF No. 75.

SO ORDERED.

Dated: July 20, 2020
       New York, New York

_____
ANALISA TORRES
United States District Judge